IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| NICHOLE S. HALL, | : | |
| Plaintiff | : | Case No.    4:06-cv-1101 |
| | : | |
| vs. | : | Judge Jones |
| | : | |
| GLENN O. HAWBAKER, INC.; | : | |
| CAPITAL ADMINISTRATIVE | : | Complaint Filed: |
| SERVICES, INC., t/d/b/a | : | May 31, 2006 |
| NCAS PENNSYLVANIA and | : | |
| GLENN O. HAWBAKER, INC. | : | (Filed Electronically) |
| EMPLOYEE BENEFIT PLAN, | : | |
| Defendants | : | |

## SECOND AMENDED COMPLAINT

The Plaintiff, by and through her attorney Bernard F. Cantorna hereby states the following:

1.     The plaintiff is an individual and resident of the Commonwealth of Pennsylvania, residing at 3675 Depot Road, Erie, Erie County, Pennsylvania 16510-5902.

2.     The defendant, Glenn O. Hawbaker, Inc., is a corporation existing under the laws of the Commonwealth of Pennsylvania with a corporate address of P.O. Box 135, 1952 Waddle Road, State College, Centre County, Pennsylvania 16804.

3.     The defendant, Capital Administrative Services, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania t/d/b/a NCAS Pennsylvania, with a business address of P.O. Box 778974, Harrisvania, Pennsylvania 17177-8974, hereinafter "NCAS".

4.     The defendant Glenn O. Hawbaker, Inc. Employee Benefit Plan is a self funded employee benefit plan offering health insurance coverage to the employees and beneficiaries of Glenn O. Hawbaker, Inc.

5.     Michael Hall is an individual and former husband of Nichole S. Hall, residing at 47 Steven Drive, Cheektowaga, New York 14227.

6.     Michael Hall is an employee of Glenn O. Hawbaker, Inc. and as such, is subject to employee benefits including health insurance from Glenn O. Hawbaker, Inc. Employee Benefit Plan ("Plan").

7.     Glenn O. Hawbaker, Inc. is the sponsor of a self-funded health insurance plan, the plan administrator and named fiduciary.

8.     NCAS is the claims administrator for the plan and a named fiduciary under the Plan.

9.     Glenn O. Hawbaker, Inc. is the defacto decision maker on granting or denying continued health insurance coverage to the plaintiff Nichole S. Hall.

10.    Nichole S. Hall and Michael T. Hall were married in McConnellsburg, Pennsylvania on November 7, 1993.

11.    In 2004, Michael T. Hall filed for divorce against Nichole S. Hall in the County of Erie, New York.

12.    On January 6, 2005, Michael T. Hall and Nichole S. Hall signed an agreement settling the disputes related to the equitable distribution of their marital property.

13 .    The settlement agreement provided that the parties would remain separated for six months after the signing of the settlement agreement so that the wife could continue to obtain medical insurance paid by the husband through his employment.  The parties' agreement provided that after June 1, 2005, the husband's attorney could file the stipulation and have a divorce decree entered.

14.    Nichole S. Hall has been the victim of recurrent thyroid cancer while insured by Glenn O. Hawbaker, Inc.

15.    While being covered by Glenn O. Hawbaker, Inc., Ms. Hall has had two cancer surgeries and multiple tests that have cost the Plan tens of thousands of dollars.

16.    Ms. Hall's cancer has reappeared and significant testing and expense is necessary for her further treatment.

17.    On or about September 7, 2005, Michael T. Hall, through his attorney, filed the separation agreement and judgment of divorce with the court having jurisdiction over the divorce in the County of Erie, New York.

18.     On September 7, 2005, the matrimonial referee, Jeffrey A. Spencer, issued a decree of divorce divorcing Michael T. Hall from Nichole S. Hall.  (See Exhibit "A", judgment of divorce dated September 7, 2005 and Exhibit "B", separation agreement filed September 2005)

19.     The divorce decree was entered September 9, 2005 and was the triggering event under ERISA requiring the husband's employer to provide notice of COBRA rights and the right to continuation of health insurance.

20.     Ms. Hall should have received notice of a qualifying event and sixty (60) days to elect to continue her insurance after the entry of her divorce.  At a minimum, Ms. Hall had until November 9, 2005 to elect continuation of COBRA health insurance benefits.

21.     On or about June 15, 2005, Michael T. Hall completed a termination notification form with NCAS Pennsylvania, indicating that there was a qualifying event under COBRA, that there was a divorce as of June 15, 2005.

22.     This termination notification form indicated that Michael T. Hall was now "single" and that Nichole S. Hall was the "exwife" of Michael T. Hall.

23.     The termination notification form indicated that the qualifying event occurred on June 15, 2005 and that coverage should end June 15, 2005.  (See Exhibit "C", June 15, 2005 termination notification form)

24.     The June 15, 2005 termination notification form incorrectly listed the

qualifying event, i.e. the parties' divorce, as June 15, 2005.

25.     As a result, on or about June 21, 2005, a COBRA notice was sent to Ms. Hall indicating she had forty-five (45) days in which to elect to continue health insurance benefits or have them terminated.  (See Exhibit "D", June 21, 2005 letter)

26.     Ms. Hall contacted NCAS and was advised that she needed to send in a monthly premium of $350.22.

27.     On or about July 29, 2005, NCAS received a $350.22 COBRA payment from Ms. Hall, with a continued group health application form completed by Ms. Hall indicating she wished to continue medical and dental health insurance.  (See Exhibit "E", COBRA application form)

28.     This form indicated the parties' true status as separated and not divorced.

29.     On August 16, 2005, Ms. Hall received notice that she needed to pay $537.01 by next month's closing date.  Said notice was sent in error as the qualifying event, the divorce, had yet to occur.  (See Exhibit "D",  pg. 5)

30.     On or about September 7, 2005, NCAS received a payment from Ms. Hall in the amount of $537.01 which brought her current through August 31, 2005 had the qualifying event been June 15, 2005.

31.     As of September 7, 2005, the qualifying event being Ms. Hall's

divorce, Ms. Hall had a prepayment of $887.23, or two and one-half months worth of insurance premiums.

32.     The plaintiff was not informed by NCAS that her insurance was subject to termination if payment was not received by the end of the month.

33.     On or about September 26, 2005, Mr. Morris mailed a payment of $350.22 for the September payment. (See Exhibit "F", copy of check)

34.     On or about October 1, 2005, Mr. Morris mailed a $350.22 check for the October premium payment to NCAS.  (See Exhibit "F", copy of checks)

35.     On or about October 12, 2005, Nichole Hall received a certificate of health insurance coverage for the period June 15, 2005 through August 31, 2005. (See Exhibit "G", certificate of health insurance coverage)

36.     On October 12, 2005, Ms. Hall received notice that her insurance was being cancelled for nonpayment.  Ms. Hall was notified that she could contact the NCAS Pennsylvania COBRA department via telephone in regards to this termination.

37.     On or about October 13 2005, Ms. Hall received a second written notification from NCAS Pennsylvania that her insurance had been cancelled.

38.     Ms. Hall made repeated telephone calls to NCAS Pennsylvania regarding her termination.  She was advised that any decision on reinstating her insurance was up to Hawbaker's.

39.     Ms. Hall contacted Hawbaker's and was informed that any decision on reinstating her insurance was up to NCAS.

40.     Accordingly, Ms. Hall had an attorney leave messages with the customer service department of NCAS with no return call being made as of October 27, 2005.

41.     On or about October 27, 2005, Ms. Hall, through her attorney Grace M. Hanlon, advised the defendant that Ms. Hall had made payment for the September premium and October premium via checks dated September 26, 2005 and October 1, 2005.  The defendant was advised that Ms. Hall had not received any notice that the September premium was in arrears and requested that her benefits be reinstated.  (See Exhibit " H", October 27, 2005 letter)

42.     On or about February 6, 2006, Ms. Hall again contacted NCAS Pennsylvania, through her attorney, advising NCAS that:  Ms. Hall had sent in the September and October premiums and was continuing to send in monthly premiums; that she had not received notice that she was in arrears; and requesting that her insurance benefits be reinstated.

43.     The February 6, 2006 letter requested a written explanation as to the continued denial of her insurance coverage and copies of all documents that relate to the denial.  (See Exhibit "I", February 6, 2006 letter)

44.     On or about February 16, 2006, Ms. Hall, through her attorney, again

requested information regarding the denial of her COBRA benefits.  The

defendant was advised that:  the plaintiff had not received proper notification of

her COBRA benefits; that she continued to attempt to make payments for the

monthly premium payments; that any denial be done in writing; and that copies be

provided of any and all records related to the denial of insurance with the grounds

supporting that decision.  (See Exhibit "J", February 16, 2006 letter)

45.     The February 16, 2006 letter advised NCAS that the qualifying event

had not occurred in June 2005, but instead the parties had divorced on September

9, 2005.  The defendant was advised that the Halls were married and that she

should have been covered under the family insurance issued to Michael T. Hall

from his employment that covered Mr. Hall and the Halls' child.

46.     On or about February 27, 2006, NCAS advised that Ms. Hall's

written appeal had been forwarded to Glenn O. Hawbaker, Inc. and that a detailed

response would be forthcoming from the group's broker of record.  (See Exhibit

"K", February 27, 2006 letter)

47.     On or about March 8, 2006, a memorandum was received from Glenn

O. Hawbaker, Inc. by Ms. Hall, listing a chronology of events with some

supporting documentation regarding Ms. Hall's claim.  No summary plan,

insurance policy or file was produced with this memorandum.  (See Exhibit "L",

March 8, 2006 memorandum)

48.     The March 8, 2006 memorandum indicated that the qualifying event

for termination would have been divorce or legal separation and did not address

whether the appropriate date of termination was June 15, 2005 or September 9,

2005.

49.     On or about March 21, 2006, Ms. Hall, through her attorney,

requested that NCAS provide copies of notifications of late payments allegedly

sent to Ms. Hall on or about August 16, 2005 and September 15, 2005.  NCAS

was again informed that, at the time that Ms. Hall's health insurance was

terminated, there should have been a credit and no payment would have been due.

(See "M", March 21, 2006 appeal)

50.     The March 21, 2006 written appeal to NCAS again advised the

defendant that the qualifying event was the divorce decree of September 9, 2005,

not June 15, 2005.  Ms. Hall asked for a formal response to her appeal letters, the

reasons as to why her insurance continued to be denied and notice of any further

administrative appellate right that Ms. Hall may have.  (See Exhibit "M")

51.     To date, no formal response has been received from NCAS regarding

her numerous requests of a review of her denial, her file, insurance policy, or

summary plan.

52.     Given the repeated requests for her insurance file, notification of her

administrative appeal rights and refusal to issue a written decision regarding the denial of her health insurance, any further appeal would be fruitless.

53.    The health insurance plan provided by Glenn O. Hawbaker, Inc. to Nichole Sue Hall and Michael T. Hall is an employee benefit plan pursuant to 29 U.S.C.S. § 1001.

54.    The defendants, NCAS Pennsylvania and Glenn O. Hawbaker, Inc., are the administrator and company funding that Plan and owe a fiduciary duty to the participants in that health insurance plan pursuant to 29 U.S.C.S. § 1104.

55.    The defendants owe a fiduciary duty to provide benefits to participants and their beneficiaries and act with the care, skill, prudence and diligence under the circumstances that a prudent person would in a like capacity.

56.    The defendants owed a fiduciary duty to Nichole S. Hall to inform her of any circumstances that threatened her interest under the Plan.

57.    The defendants have a duty of disclosure when a plan administrator is aware that the beneficiary is unaware of facts she needs to know in order to protect her interests and trustee has knowledge of such facts.

58.    On or about early September, Paul Morris, Ms. Hall's fiancé, had a telephone conversation with NCAS regarding the status of Nichole S. Hall's health insurance payments.  He was informed that Ms. Hall was current.  He was not informed in this telephone conversation that September's payment was due

August 15, 2005 and the defendants considered her insurance payment late and  in arrears.

59.     On September 15, 2005, NCAS sent written notice to the plaintiff, indicating that Ms. Hall's premiums were in arrears as of August 29, 2005 in the amount of $350.22.  The September 15, 2005 notice advised Ms. Hall that "her continuation of coverage benefits may be cancelled as of next month's closing date if this balance is not paid".

60.     The September 15, 2005 notice from NCAS did not indicate to Ms. Hall that as of October 1, 2005, NCAS intended to cancel her COBRA insurance.

61.     The Plan documents contain a COBRA Administration Service Rider that provides that if a participant is late with payment, "NCAS shall notify the COBRA continuant in writing.  If NCAS does not receive a full premium payment within thirty days from the date of the notice, NCAS shall cancel the COBRA continuant retroactive to the first day of the period for which timely payment has not been made. . ."

62.     The September 15, 2005 notice sent from NCAS to Ms. Hall, indicating that her insurance may be cancelled as of next month's closing date, indicates to the participant that if payment is not received by October's closing date, COBRA insurance may be cancelled.

63.     NCAS' records indicate receipt by NCAS of two premium payments

from Ms. Hall on October 13, 2005, said payments bringing Ms. Hall's account status from being in arrears to being paid under the defendant's billing system.

64.     Pursuant to the terms of the agreement for third party Administration Services between Hawbaker and NCAS, and the September 15, 2005 notice, a participant has thirty days from the September 15, 2005 notice in which to bring her account current.

65.     Pursuant to the terms of the Plan and the September 15, 2005 notice, the defendants untimely rejected a payment "received October 13, 2005" and cancelled the plaintiff's insurance prematurely.

**COUNT ONE**
**BREACH OF FIDUCIARY DUTY**
**Nichole S. Hall vs. NCAS Pennsylvania and Glenn O. Hawbaker, Inc.**

66.     Paragraphs 1 through 65 are incorporated herein by reference.

67.     The plaintiff inquired of NCAS in early September 2005 as to the amount of health insurance premium owed.  Plaintiff was informed that premiums were paid.

68.     The defendant was aware that under their billing system, the plaintiff was in arrears for the month of September.  No notice of this premium due was sent to the plaintiff and the defendant did not inform the plaintiff that payment needed to be made before the end of the month or insurance would be terminated.

69.     The defendant was aware that the plaintiff did not know her account

was in arrears and at risk of termination, and their failure to disclose the

impending termination violated their fiduciary duty to the plaintiff.

70.    On or about July 29, 2005, when the defendant received the

application for continued health coverage from Nichole Hall, advising the marital

status as separated and not divorced, the defendant was aware or should have been

aware that there had not been a qualifying event and failed to advise plaintiff of

the same.

WHEREFORE, plaintiff moves the court for an order granting the

following:  a)  declaratory judgment; b) reasonable attorney's fees and costs; c)

finding that the qualifying event was the divorce decree entered on or about

September 9, 2005; d)  reinstating the health insurance coverage provided by

Glenn O. Hawbaker, Inc., to the plaintiff Nichole Hall as of September 9, 2005; e)

that Ms. Hall be allowed to make any and all insurance premium payments that

would be required under the insurance contract as of the order of the court; and f)

that the defendants be responsible for any and all medical bills incurred by

Nichole Sue Hall from June 15,2005 to the present.

**COUNT TWO**
**WRONGFUL DENIAL OF BENEFITS**
**Nichole S. Hall vs. NCAS Pennsylvania and Glenn O. Hawbaker, Inc**

71.    Paragraphs 1 through 70 are incorporated herein by reference.

72.    Through the Consolidated Omnibus Budget Reconciliation Act

(COBRA), the participant must be given a minimum of sixty (60) days to elect

COBRA benefits from the date of the "qualifying event" or a notice from the

beneficiary, whichever is later.  29 U.S.C. § 1165.

73.    The COBRA notice from the defendants insufficiently identified what

the "qualifying event" was that terminated Ms. Hall's insurance.  The notice

incorrectly listed the qualifying event as a June 15, 2005 legal separation/divorce,

which in fact had not occurred.

74.    The COBRA notice failed to provide Nichole Hall with a readily

comprehensible notice that advised her of what insurance premium was due, when

it became due and the last date of coverage prior to termination.

75.    The election period under 29 U.S.C. § 1165 would have been at least

sixty (60) days from the qualifying event, i.e. the divorce entered September 9,

2005, or at a minimum, November 9, 2005.

76.    On October 13, 2005, the date that the defendants incorrectly

terminated Ms. Hall's health insurance benefits, she was in fact entitled to benefits

under her husband's health insurance.  The notice of termination was legally

insufficient and factually incorrect and Ms. Hall is due a continuation of benefits.

WHEREFORE, plaintiff moves the court for an order granting the

following:  a)  declaratory judgment; b) attorney's fees c) finding that the

qualifying event was the divorce decree entered on or about September 9, 2005; d)

reinstating the health insurance coverage provided by Glenn O. Hawbaker, Inc., to the plaintiff Nichole Hall as of June 15, 2005; e) that Ms. Hall be allowed to make any and all insurance premium payments that would be required under the insurance contract as of the order of the court; and f) that the defendants be responsible for any and all medical bills incurred by Nichole Sue Hall from June 15,2005 to the present pursuant to 29 U.S.C. § 1132(a)(3) and 1132(a)(1).

## COUNT THREE
## Nichole S. Hall vs. Glenn O. Hawbaker, Inc. And NCAS

77.     Paragraphs 1 through 76 are incorporated herein by reference.

78.     The plaintiff has made repeated requests for a summary description of the Plan, a copy of all documents related to the denial of benefits, a written explanation of the denial of Ms. Hall's benefits and all documents that relate to the denial of this claim pursuant to 29 U.S.C. § 1024(b)(4) and § 1132(c).

79.     The defendants have ignored plaintiff's request for the above-referenced documents and accordingly, is liable to the beneficiary in an amount up to $100.00 a day from the date of failure to provide such information.

WHEREFORE, plaintiff moves the court for an order imposing a penalty of $100.00/day until defendant complies with plaintiff's requests.

## COUNT FOUR
## Nichole S. Hall vs. Glenn O. Hawbaker, Inc. and NCAS Pennsylvania

80.     Paragraphs 1 through 79 are incorporated herein by reference.

81.    The qualifying event did not occur on June 15, 2005, as the parties were separated and at that point in time, not divorced.  The COBRA notice sent to the plaintiff on or about June 21, 2005 was invalid because no qualifying event occurred to trigger such notice.

82.    The plaintiff's COBRA election form indicated her status as separated and not divorced and defendants were on notice that a qualifying event had yet to occur.

83.    Plaintiff has notified defendants on numerous occasions that the qualifying event was the divorce decree entered in September 2005, yet defendants have failed to send a COBRA notice regarding the qualifying event, i.e. the divorce.

84.    Plaintiff's COBRA election had no legal course or effect and defendants have not given plaintiff COBRA notice pursuant to 29 U.S.C. § 1166 after a legally recognized qualifying event, that being the entry of a divorce decree.

85.    Plaintiff is entitled to notice and election of COBRA benefits pursuant to the September 9, 2005 divorce decree; to recover from the defendants, any out-of-pocket medical expenses incurred; and the reinstatement of her insurance.

WHEREFORE, plaintiff moves the court for an order granting the following:  a)  declaratory judgment; b) attorney's fees c) finding that the qualifying event was the divorce decree entered on or about September 9, 2005; d) reinstating the health insurance coverage provided by Glenn O. Hawbaker, Inc., to the plaintiff Nichole Hall as of June 15, 2005; e) that Ms. Hall be allowed to make any and all insurance premium payments that would be required under the insurance contract as of the order of the court; f) that the defendants be responsible for any and all medical bills incurred by Nichole Sue Hall from June 15,2005 to the present pursuant to 29 U.S.C. § 1132(a)(3) and 1132(a)(1); and (g) that the defendants pay $100.00/day for the failure to comply with the notice requirements after being advised of the date of divorce.

## COUNT FIVE
## WRONGFUL DENIAL OF BENEFITS
## Nichole S. Hall vs. Glenn O. Hawbaker, Inc. Employee Benefit Plan

86.     Paragraphs 1 through 85 are incorporated herein by reference.

87.     The plaintiff's monthly COBRA payments were made timely pursuant to the explicit terms of the Plan and the notices regarding payment sent to Ms. Hall.

88.     Ms. Hall's dependent insurance was cancelled contrary to the terms of the Plan and ERISA.

WHEREFORE, plaintiff moves the court for an order granting the following: (a) declaratory judgment; (b) attorney's fees; (c) reinstatement of Ms. Hall's insurance provided by the Glenn O. Hawbaker, Inc. Employee Benefit Plan as of June 15, 2005; (d) that Ms. Hall be allowed to make any insurance premium payments required under the insurance contract as to the order of the court; and (e) that the defendant be responsible for any and all medical bills incurred by the plaintiff from June 15, 2005 to the present.

## COUNT SIX
## EQUITABLE RELIEF
### Nichole S. Hall vs. Glenn O. Hawbaker, Inc., and
### Glenn O. Hawbaker, Inc. Employee Benefit Plan

89. Paragraphs 1 through 88 are incorporated herein by reference.

90. The defendants failed to adequately inform Nichole S. Hall that her insurance would be cancelled if a premium payment was not received on or before October 1, 2005.

91. The late notice sent to the plaintiff on September 15, 2005 indicated that Ms. Hall's insurance may be cancelled if premium payments were not received in full by the next month's closing date.

92. The late notices sent by the defendants to participants and beneficiaries misrepresents that the Plan will accept payment by the end of the following month's closing date before terminating benefits.

93.    The late notice provided by the defendants to the plaintiff, failed to inform Nichole S. Hall that her insurance would be cancelled if a premium payment was not received before October 1, 2005 and led the plaintiff and other plan participants to incorrectly believe that they had to the close of the next month in which to make payment.

94.    The misrepresentations and failure to inform are material and led to the cancellation of the plaintiff's insurance contrary to the representations made.

95.    The COBRA notice, letters and late notices sent to Nichole S. Hall are contradictory as to when the last date a participant can make payment and still be considered timely, and misrepresent to participants the actual date that the Plan will terminate insurance based upon a late payment.

WHEREFORE, plaintiff moves the court for an order granting the following: (a) declaratory judgment; (b) attorney's fees; (c) reinstatement of Ms. Hall's insurance provided by the Glenn O. Hawbaker, Inc. Employee Benefit Plan as of June 15, 2005; (d) that Ms. Hall be allowed to make any insurance premium payments required under the insurance contract as to the order of the court; and (e) that the defendant be responsible for any and all medical bills incurred by the plaintiff from June 15, 2005 to the present.

**COUNT SEVEN**
**COBRA VIOLATIONS**
**Nichole S. Hall vs. Glenn O. Hawbaker, Inc., and**
**Glenn O. Hawbaker, Inc. Employee Benefit Plan**

96.     Paragraphs 1 through 95 are incorporated herein by reference.

97.     The COBRA notices, letters and late notices mailed to the plaintiff did not give accurate and understandable information on COBRA conversion and when the last date premium payments would be accepted.

98.     The Plan failed to give plaintiff notice as required by 29 U.S.C. § 1166(a)(1).

99.     The COBRA conversion  form failed to define the qualifying event that terminated the plaintiff's insurance.

100.   The COBRA conversion form, letters and notices of when premium payments were due, failed to explain the circumstances that would result in disqualification or denial or loss of benefits, in a manner calculated to be understood by the average plan participant.

WHEREFORE, plaintiff moves the court for an order granting the following: (a) declaratory judgment; (b) attorney's fees; (c) reinstatement of Ms. Hall's insurance provided by the Glenn O. Hawbaker, Inc. Employee Benefit Plan as of June 15, 2005; (d) that Ms. Hall be allowed to make any insurance premium payments required under the insurance contract as to the order of the court; and (e)

that the defendant be responsible for any and all medical bills incurred by the

plaintiff from June 15, 2005 to the present.

BRYANT & CANTORNA, P.C.

s/ Bernard F. Cantorna

By,

Bernard F. Cantorna, Esquire, ID No. 81794
1901 East College Avenue
State College, PA 16801
(814) 238-4370 TEL
(814) 238-8016 FAX
Cantorna@excite.com

DATE:_____September 21, 2006

# **VERIFICATION**

I verify that the statements made in the foregoing are true and correct.  I

understand that false statements herein are made subject to the penalties of 18

Pa.C.S. 4904, relating to unsworn falsification to authorities.

s/ Nichole S. Hall

_____

Nichole S. Hall

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL ACTION

NICHOLE S. HALL,                     :
                    Plaintiff        :        Case No.      4:06-cv-1101
                                     :
vs.                                  :        Judge Jones
                                     :
GLENN O. HAWBAKER, INC.;             :
CAPITAL ADMINISTRATIVE               :        Complaint Filed:
SERVICES, INC., t/d/b/a              :        May 31, 2006
NCAS PENNSYLVANIA and                :
GLENN O. HAWBAKER, INC.              :        (Filed Electronically)
EMPLOYEE BENEFIT PLAN,               :
                    Defendants       :

## CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of the within Second Amended

Complaint was served by depositing the same with the United States Postal

Service, postage prepaid and addressed to the following:

David R. Fine, Esquire                Thomas G. Collins, Esquire
Amy L. Groff, Esquire                 Stephen Moniak, Esquire
Market Square Plaza                   213 Market Street, Third Floor
17 North Second Street, 18th Floor    Harrisburg, PA 17101
Harrisburg, PA 17101

                                      BRYANT & CANTORNA, P.C.


                                      s/ Bernard F. Cantorna
                                      By,
                                           Bernard F. Cantorna, Esq.
                                           1901 East College Avenue
                                           State College, PA 16801
                                           (814) 238-4370 TEL
                                           (814) 238-8016 FAX
                                           PA ID No. 81794
                                           Cantorna@excite.com

DATE:        September 21, 2006